IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | No. 17-138 |
| | : | |
| RALPH MALDONADO | : | |

## MEMORANDUM

**Juan R. Sánchez, C.J.**                                                              **January 15, 2021**

Defendant Ralph Maldonado, who is currently serving a 120-month sentence, moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). Maldonado seeks a reduction of his sentence to time served asserting the coronavirus disease 2019 (COVID-19) pandemic combined with his diabetes, obesity, and high cholesterol, which he contends places him at an increased risk of harm from the virus, are extraordinary and compelling circumstances justifying his release. Although the Government concedes Maldonado's medical conditions present extraordinary and compelling circumstances justifying release, it opposes Maldonado's motion, citing Maldonado's history and characteristics and danger to the community should he be released. Because the Court finds Maldonado is a danger to the community, the Court will deny his motion.

## BACKGROUND

On May 9, 2018, Maldonado pleaded guilty to one count of felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). On March 13, 2019, Maldonado was sentenced to 120 months' incarceration. Maldonado has since been serving his term at FCI Fort Dix in New Jersey. His anticipated release date is October 28, 2025.

Since Maldonado's sentencing, much has changed. Due to COVID-19, a novel and highly contagious respiratory virus, the United States (and the world) has confronted a rapidly changing public health crisis that has reached the scale of a global pandemic. The virus commonly causes

fever, coughing, and shortness of breath, amongst a wide range of other symptoms. *See Symptoms of Coronavirus*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/symptoms-testing/symptoms.html (last updated Dec. 22, 2020). To date, the virus has infected 22,740,142 people in the United States and resulted in 379,255 deaths. *See United States COVID-19 Cases and Deaths by State*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last updated Jan. 13, 2021).

Some populations, including the elderly and immunocompromised, are at a higher risk of developing serious complications upon exposure to the virus. The CDC has identified people of any age who have serious underlying medical conditions as those who are also at a higher risk for severe illness. *See People At Increased Risk*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last updated Jan. 4, 2021). High risk underlying medical conditions include chronic kidney disease, serious heart conditions, severe obesity, sickle cell disease, cancer, and immunocompromised conditions from smoking, bone marrow and organ transplantation, immune deficiencies, or weakening medications. *See id*.

Because COVID-19 is highly contagious and spreads primarily through person-to-person contact, its existence has dramatically affected all realms of life. Federal, state, and local public health authorities have advised certain precautions be taken to avoid exposure and prevent the spread of the virus. In most states, individuals have been directed to stay at home unless engaging in an essential activity or providing life-sustaining or government services. Individuals are also encouraged to wear face masks, avoid gathering indoors, and socially distance themselves from others.

In light of the precautions necessary to prevent the virus' spread, COVID-19 poses a unique challenge to the prison system. *See Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html (last updated Dec. 31, 2020). Nevertheless, in response to the COVID-19 pandemic, the BOP has implemented several protocols to protect the health and safety of the inmates, staff, and general public from the spread of the virus. The BOP's efforts include quarantining new inmates at the facility until they are cleared, screening inmates by health services prior to placement, suspending visits, and significantly decreasing the traffic of individuals entering the facilities. *See BOP Implementing Modified Operations*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_status.jsp (last updated Nov. 25, 2020).

Maldonado, who contends the BOP's efforts are insufficient, sent a letter requesting compassionate release to the warden of FCI Fort Dix that was denied on May 22, 2020. Maldonado then filed the instant motion for compassionate release on June 17, 2020. Maldonado states he suffers from diabetes, obesity, and high cholesterol, which he argues place him at high risk of severe illness should he contract COVID-19. He is currently 58 years old.

The Government concedes Maldonado's diabetes presents extraordinary and compelling circumstances justifying release, but it opposes Maldonado's motion arguing Maldonado is a danger to the community which prevents his release. At a December 21, 2020, teleconference, the parties agreed a hearing was not necessary and the Court may rule on the papers.

**DISCUSSION**

The Court will deny Maldonado's motion because he poses a danger to the community. Pursuant to 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, the Court may modify a

term of imprisonment on the defendant's motion after the defendant has exhausted his administrative remedies. In relevant part, § 3582(c)(1) provides that a court

> may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Congress, however, did not define the term "extraordinary and compelling reasons," except to state that "[r]ehabilitation . . . alone" does not suffice. 18 U.S.C. § 994(t). Rather, Congress delegated the authority to define "extraordinary and compelling reasons" to the U.S. Sentencing Commission.

Section 1B1.13 of the Sentencing Guidelines explains that a sentence reduction under § 3582(c)(1)(A) may be ordered where a court determines:

> [A]fter considering the factors set forth in 18 U.S.C. § 3553(a)," that—
>
> (1)   (A)   extraordinary and compelling reasons warrant the reduction; . . .
>
> (2)   the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3)   the reduction is consistent with this policy statement.

Application Note 1 to § 1B1.13 enumerates three specific reasons that qualify as "extraordinary and compelling" based on the medical condition, age, or family circumstances of the defendant. U.S.S.G. § 1B1.13 n.1(A)–(C). Application Note 1 further provides a "catch-all" provision, which

allows a court to modify a sentence for "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)."[1] *Id.* n.1(D).

To grant Maldonado's motion, the Court must find that (1) extraordinary and compelling reasons warrant the reduction, (2) Maldonado is not a danger to the safety of any other person or to the community as provided in 18 U.S.C. § 3142(g), and (3) the applicable sentencing factors under 18 U.S.C. § 3553(a) warrant the reduction.[2] The Government concedes Maldonado's diabetes presents an extraordinary and compelling reason justifying release. In light of Maldonado's criminal history, and his conduct in these crimes, however, the Court is not persuaded he is not a danger to the community. The Court will thus deny his motion.

With regard to the first factor, Maldonado argues extraordinary and compelling reasons exist because of his vulnerability to COVID-19 in prison, given his underlying health conditions,

---

[1] Interpreting this application note in light of recent amendments to the compassionate release statute, a majority of the district courts that have considered the issue have concluded that a *court* (not just the BOP) may independently determine whether extraordinary and compelling reasons, other than the reasons listed in the policy statement, exist in a particular case. *See United States v. Rodriguez*, 451 F. Supp. 3d 392, 397 (E.D. Pa. 2020) (collecting cases). At the time the application note was drafted, only the Director of the BOP could move for compassionate release on an inmate's behalf. In December 2018, however, "the First Step Act amended § 3582(c)(1)(A) to allow prisoners to directly petition courts for compassionate release, removing the BOP's exclusive 'gatekeeper' role." *Id.* at 396. The Sentencing Commission has not updated the policy statement to account for this statutory change, and the policy statement is clearly outdated in some respects, as it continues to track the former statutory language permitting a court to reduce a term of imprisonment only "[u]pon motion of the Director of the Bureau of Prisons." U.S.S.G. § 1B1.13 & cmt. n.4. Given the changes to the statute, numerous courts have found the policy statement "does not constrain [a court's] independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A)." *Rodriguez*, 451 F. Supp. 3d at 397 (alteration in original) (citation omitted) (collecting cases). A minority of courts have found otherwise. *See id.* at 398 (collecting cases). Because the Government concedes Maldonado's condition satisfies Note 1(A) of U.S.S.G. § 1B1.13, the Court need not decide this issue.

[2] The Court must also find the reduction is otherwise consistent with the policy statement. In light of its analysis of the other factors, the Court need not address this factor.

which place him at high risk of serious illness from COVID-19. In *United States v. Raia*, the Third

Circuit held "the mere existence of COVID-19 in society and the possibility that it may spread to

a particular prison alone cannot independently justify compassionate release, especially

considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's

spread." 954 F.3d 594, 597 (3d Cir. 2020). As a result, Maldonado's generalized concern about

COVID-19 and the BOP's efforts in containing the virus at FCI Fort Dix is insufficient by itself to

justify compassionate release. In this case, however, the Government concedes Maldonado's

diabetes, combined with the COVID-19 pandemic, satisfies Note 1(A) of U.S.S.G. § 1B1.13. The

Government states:

> The government acknowledges that an inmate who presents a risk factor identified by the
> CDC as increasing the risk of an adverse outcome from COVID-19 presents "a serious
> physical or medical condition . . . that substantially diminishes the ability of the defendant
> to provide self-care within the environment of a correctional facility," as stated in note
> 1(A), as, due to his comorbidities, the defendant may be less able to protect himself against
> an unfavorable outcome from the disease. Here, the defendant's condition of diabetes
> meets that test.

Gov't's Resp. to Def.'s Mot. 14 n.4, ECF No. 53.  The CDC lists Type 2 Diabetes Mellitus as a

risk factor for severe illness if infected with COVID-19. Maldonado's medical records confirm he

has Type 2 Diabetes Mellitus. *See* Def.'s Mot., Ex. B, at 5, ECF No. 50. The Court therefore finds

Maldonado's diabetes presents an extraordinary and compelling circumstance justifying his

release.

Regardless of whether Maldonado presents an extraordinary and compelling circumstance

to consider his release, the Court finds his danger to the community prevents his release. Section

3142(g) sets out the factors courts must consider including "the nature and circumstances of the

offense charged," "the history and characteristics of the person," including "the person's character,

physical and mental condition, family ties, . . . community ties, past conduct, history relating to

drug or alcohol abuse, [and] criminal history," and "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g). These factors weigh in favor of finding Maldonado a danger to the community.

Maldonado has been designated an armed career criminal. His instant offense includes possession of firearms he was not legally entitled to possess yet attempted to sell. In addition, Maldonado has 13 prior offenses, spanning nearly 30 years. In 1994, he pleaded guilty to manufacture, delivery, and possession with intent to manufacture or deliver cocaine, and he was sentenced to five years' probation. In 1997, he pleaded guilty to the same crime, and he was sentenced to a term of three to six years' imprisonment. In 2003, he was part of a conspiracy to obtain funds in excess of $150,000 by defrauding the Insurance Corporation of New York, and he was sentenced to one and a half to three years' imprisonment. In 2009, he was sentenced to 15 years' probation for the manufacture, delivery, and possession with intent to manufacture or deliver cocaine and heroin. In 2015, he committed the instant offense.

Many of Maldonado's prior crimes were committed while he was on probation or supervised release. His repeated willingness to re-offend—through drug trafficking, insurance fraud, or selling firearms—weighs against his release. Further, Maldonado has served less than half of his 120-month sentence, and release at this juncture would not reflect the seriousness of the offense, promote respect for the law, or provide just punishment. *See* 18 U.S.C. § 3553(a)(2)(A). As a result, Maldonado poses a danger to the community and the Court will deny his motion for compassionate release on this basis. *See United States v. Daniels*, No. 15-127, 2020 WL 4674125, at \*4 (E.D. Pa. Aug. 12, 2020) (denying compassionate release where defendant was designated an armed career criminal with numerous drug trafficking convictions).

**CONCLUSION**

In conclusion, because Maldonado poses a danger to the community, the Court will

deny his motion for compassionate release pursuant to § 3582(c)(1)(A).

An appropriate order follows.

BY THE COURT:

/s/  Juan R. Sánchez
Juan R. Sánchez, C.J.

8